UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| SEAN L. TRICKETT | : | |
| <u>DEBTOR</u> | : | CASE NO. 07-44418-JBR |

## MEMORANDUM OF DECISION

This matter came before the Court on the Debtor's Motion for Adjudication of Whether Debtor's Personalty is Property of Estate or Whether Property is Exempt (Docket #21) (the "Motion") and the Chapter 7 Trustee's Response thereto, which included a prayer for turnover of the property pursuant to 11 U.S.C. § 542 (Docket #24). The property at issue is the Debtor and his non-debtor spouse's joint federal and state tax refunds for the year 2007.

**FACTS:**

Sean L. Trickett (the "Debtor") filed his chapter 7 petition on December 21, 2007. The Debtor and his non-debtor spouse filed joint federal and state tax returns for the 2005, 2006 and 2007 tax years. For the tax year 2007, the Debtor and his spouse received a federal tax refund of $3,975.00 and a state tax refund of $546.00 for a total sum of $4,522.00 (the "Refund"). The Debtor did not list the Refund on his Schedule B. In his Motion, the Debtor alleges that his spouse earned $46,045.00 with federal withholding of $5,118.00 and state withholding of $2,332.00 and that he earned $33,417.00 with federal withholding of $2,000.00 and state withholding of $1,218.00. The Debtor and his spouse's joint federal tax liability was $3,142.00 and their joint state tax liability was $3004.00. The Debtor alleges in his Motion that his individual post-petition withholdings are $387.84 for the last 10 days of December 2007.

The Trustee asserts in her Response that the Debtor and his spouse use one joint bank account for the receipt of income and payment of family expenses. The Trustee also alleges that the Debtor and his spouse deposited their joint 2006 tax refund into their joint bank account, which is supported by the Debtor's bank statements attached to the Trustee's Response as Exhibit 1.

**POSITIONS OF THE PARTIES:**

The Debtor initially contended in his Motion that the portion of the Refund attributable to post-petition withholding is not part of the bankruptcy estate. He also contended that the pre-petition portion of the Refund should be allocated proportionately based on his and his spouse's respective withholdings and that only the portion attributable to him is property of the estate. In his post-trial memorandum, the Debtor asserts for the first time an inconsistent position: no portion of the Refund should be considered property of the estate as the Debtor retained the ability to control the amount of the Refund by adjusting his post-petition withholding to reduce or even eliminate the Refund.[1] Although she believes that the failure of the Debtor to list the Refund on his schedules constitutes grounds to seek recovery of the entire tax refund, the Trustee takes the position in her Response that the Debtor's portion of the Refund attributable to the pre-petition portion of the tax year is property of the estate. The Trustee argues that the determination should be made by a pro rata by days allocation of the Refund amount using a 365-day year. With respect to the allocation of the Refund between the Debtor and his spouse, the Trustee contends it should be 50/50. Accordingly, the Trustee seeks

---

[1] Although in some cases it may be possible for a debtor to substantially reduce or eliminate a refund, it factually could not have happened in this case because the Debtor's petition was filed a mere 10 days before the end of the tax year, leaving insufficient time for this type of post-petition adjustment.

2

to recover the one half of the portion of the Refund that is attributable to the pre-petition period of the 2007 tax year, i.e. January 1, 2007 to December 21, 2007.

**DISCUSSION:**

The Debtor's Motion raises three distinct issues regarding whether and to what extent the Refund becomes property of the Debtor's bankruptcy estate. First, does any portion of the Debtor's tax Refund for the tax year in which he filed bankruptcy constitute property of the bankruptcy estate. Second, if the first question is decided in the affirmative, how should the Court allocate the Refund between pre and post-petition portions of the tax year. The final issue arises because the Debtor filed joint returns with his non-debtor spouse, i.e. how should the Court allocate the pre-petition portion of the Refund between the Debtor and his spouse as only the portion attributable to the Debtor becomes property of the estate. The answer to the first and second questions is a matter of federal law as it calls upon the Court to determine whether a tax refund is "property" under section 541 of the Bankruptcy Code. *In re Marvel*, 372 B.R. 425, 430 (Bankr. N.D. Ind. 2008) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). As discussed below, it is well established bankruptcy law that the portion of the Refund allocable to the pre-petition portion of the tax year becomes property of the estate while the portion of the Refund allocable to the post-petition portion of the tax year is property of the Debtor. The method of allocation, however, is the subject of some dispute. To answer the third question, the Court must look to state law to determine the extent of the Debtor's interest in the pre-petition portion of the joint Refund as of the commencement of the case. *Id.*; *see also In re Marciano*, 372 B.R. 211, 214 (Bankr. S.D.N.Y. 2007) (applying state law to determine extent of debtor's interests in the pre-petition portion of a joint tax refund).

3

## A. IS ANY PORTION OF THE REFUND PROPERTY OF THE ESTATE?

Although cases on this issue are scant in the First Circuit, it is without question that the pre-petition portion of the Debtor's Refund is property of the bankruptcy estate. Section 541 of the Bankruptcy Code makes "all legal or equitable interests of the debtor in property as of the commencement of the case" property of the bankruptcy estate. 11 U.S.C. § 541(a). The starting point for an analysis of whether a tax refund becomes property of the estate is the U.S. Supreme Court's decision in *Segal v. Rochelle*, 382 U.S. 375 (1966) ("*Segal*"), which has been cited with approval by the bankruptcy courts in this district when dealing with contingent or inchoate claims. *See In re Tomaiolo*, 205 B.R. 10, 14 (Bankr. D. Mass. 1997); *In re Riccitelli*, 320 B.R. 483, 489 (Bankr. D. Mass. 2005) (both applying *Segal* to determine whether a debtor's malpractice claim was property of the estate). The Court in *Segal* indicated that one of the primary purposes of the Bankruptcy Act was "to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition." *Segal*, 382 U.S. at 379. The Court went on to note that "the term 'property' had been broadly construed to achieve that end, permitting even novel or contingent interests to be included." *In re Donnell*, 357 B.R. 386, 390 (Bankr. W.D. Tex. 2006) (citing *Segal*, 382 U.S. at 379). The Court in *Segal* acknowledged that another main purpose of the Bankruptcy Act was to "leave the bankrupt free after the date of his petition to accumulate new wealth in the future." *Segal*, 379-80. Therefore, according to *Segal*, only property that was "sufficiently rooted in the pre-bankruptcy past" was to be considered property of the estate. *Id.* at 380. Applying this reasoning, the Court held that the debtors' post-petition

4

tax refund, attributable to loss-carrybacks to pre-petition tax years, was property of the bankruptcy estate. *Segal*, 382 U.S. at 376.

The Supreme Court also addressed the issue of tax refunds in *Kokosza v. Belford*, 417 U.S. 642 (1974). The debtor had filed his bankruptcy petition in early January 1972. The Court held that the entire refund for the 1971 tax year belonged to the bankruptcy estate as "the tax payments refunded here were income tax payments withheld from the petitioner prior to his filing for bankruptcy and are based on earnings prior to that filing." *Kokosza*, 417 U.S. at 647. The legislative history underlying the enactment of section 541 of the Code specifically instructs that "[the] result of [*Segal*] is followed, and the right to a refund is property of the estate." S. Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. Since the enactment of the Bankruptcy Code, courts have adhered to the Supreme Court's reasoning in *Segal* and *Kokosza*, holding that the portion of a debtor's tax refund attributable to the pre-petition portion of the tax year from which the refund derived is property of the bankruptcy estate.[2] *See In re Barowsky*, 946 F.2d 1516, 1518 (10th Cir. 1991) (compiling cases and noting that every court that has considered the issue has followed this approach). Having answered the first question in the affirmative, the Court now turns to the method to be employed in allocating the Refund between pre and post-petition periods to determine the portion of the Refund that could potentially be property of the estate.[3]

---

[2] Some courts have reasoned that the "sufficiently rooted" portion of the *Segal* test no longer applies. These courts reason that the definition of "property of the estate" under the Code differs from the treatment of the term property under the Act in that the Code limits its reach to "all legal and equitable interests of a debtor in property **as of the commencement of the case**" whereas the Act did not. *In re Burgess*, 438 F.3d 493, 498 (5th Cir. 2006); *Donnell*, 357 B.R. at 391 n.6. Property that falls within the inherent temporal limitation of section 541(a) satisfies the sufficiently rooted test as a matter of law.

[3] I use the word "potentially" due to the Debtor's joint filing with his non-debtor spouse. The joint filing requires the additional step taken in Part C of this Decision of allocating the pre-petition portion of the refund that would otherwise become property of the estate among the Debtor and his spouse. If the Debtor and his spouse filed a joint bankruptcy case, this step would also be required to divide the refund between their respective estates.

5

## B. ALLOCATING THE REFUND BETWEEN PRE AND POST-PETITION

The burden of proof in allocating the Refund is on the Trustee. Because the action is akin to a turnover action, "it is the trustee who must come forward with sufficient evidence to establish that the portion of the tax refund claimed is in fact property in which the debtor had a legal or equitable interest as of the commencement of the case." *Donnell*, 357 B.R. at 396. The real question is whether the pro rata by days allocation method advocated by the Trustee is appropriate and sufficient to carry her burden in this case.

The pro rata by days method is frequently used to allocate a tax refund between pre and post-petition periods. *See In re Orndoff*, 100 B.R. 516 (Bankr. E.D. Cal. 1989); *Barowsky*, 946 F.2d at 1518 n.1; *In re Martell*, 349 B.R. 233, 235 (Bankr. D. Idaho 2005); *In re Edwards*, 363 B.R. 55, 59 (Bankr. D. Conn. 2007). This method of calculating the portion of a refund attributable to the estate involves dividing a debtor's refund over a 365-day year and multiplying the resulting number by the number of days from the beginning of the year to the petition date. A tax year is exactly that, a tax *year*; therefore, in determining the amount of the refund that becomes property of the Debtor's estate, the Court will not dissect the Debtor's tax return to determine the portion of the Debtor's refund attributable to actual pre-petition withholding or to particular deductions, credits, individual business income and losses or exemptions. The Court is mindful that a pro rata by days approach may not yield a perfect result in every situation, but it is better than any other available approach. It provides a bright-line test that effectuates Congress's intent as expressed in the language of and legislative history of section 541.[4]

---

[4] The Court is aware that some courts have concluded that the pro rata by days method is not mandatory. *Donnell*, 357 B.R. at 395-96. Even if there are circumstances that support using a different approach, they are not present in this case.

6

Applying the pro rata by days approach to the Refund of $4,522.00 yields a per diem amount of $12.39. The per diem amount multiplied by 355 days (the number of calendar days in the tax year preceding the Debtor's bankruptcy filing) yields the amount of $4,398.45, to which the estate is entitled pending further adjustment based on the allocation between the Debtor and his spouse. Having determined the pre-petition portion of the Debtor and his spouse's Refund, the Court now turns to state law to determine the extent of the Debtor's interest in this amount.

## C. DETERMINING EXTENT OF DEBTOR'S INTEREST IN PRE-PETITION PORTION OF TAX REFUND

Determining the extent of the debtor's interest in the pre-petition portion of the Refund involves allocating the pre-petition portion between the Debtor and his joint-tax-filing, non-debtor spouse. The question of the extent of a debtor's interest is one of state law and no state law in Massachusetts speaks directly to the issue. A review of cases facing this same apportionment question reveals that there are at least three approaches to accomplish this task. The first approach is to apportion the Refund based on each spouse's withholding. *In re Lyall*, 191 B.R. 78 (E.D. Va. 1996) (summarizing different approaches). Another approach is to allocate the Refund based on the income earned by each spouse. *In re Verill*, 17 B.R. 652 (Bankr. D. Md. 1982). The final approach, adopted by the bankruptcy in *In re Innis*, 331 B.R. 784, 786 (Bankr. C.D. Ill. 2005), and in *In re Barrow*, 306 B.R. 28 (Bankr. W.D.N.Y. 2004), is to split the Refund equally between the spouses, the so-called "50/50 refund rule."

It would be difficult to articulate the reason for adopting the "50/50 refund rule" better than the court in *Barrow* did in its decision, in which it stated:

7

> I disagree with those courts that allocate refunds in proportion either to income or amount of withholdings. The reality of the Internal Revenue Code is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings. For many taxpayers, a significant portion of the refund is attributable not to these factors, but to any number of credits, such as the child tax credits or credits for education or for child and dependent care expenses. In many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use the exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income. For many married couples, a joint filing permits use of a more favorable tax table. The results are most dramatically indicated when one spouse earns the entire family income. In that instance, because a spouse without income has joined in signing the tax return, the family may pay significantly less tax, as compared to the tax that would have accrued to a married person filing separately but with identical income and withholdings. It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse.

*Barrow*, 306 B.R. at 30-31.

The court in *Innis* goes on to explain the underpinnings of the "50/50 refund rule" as well as the practical reasons supporting its adoption. The imposition of joint and several liability for a tax deficiency that results from a jointly filed tax return is one of the factors underlying the presumption of equal ownership of a tax refund. *Innis*, 331 B.R. at 787. If a debtor's spouse can suffer the burdens of filing a joint return, he or she should get the attendant benefits as well. *Id.*

Some courts have looked to marital dissolution law as support for a joint ownership approach. *Innis*, 331 B.R. at 787; *see also Hejmowski*, 296 B.R. 645, 649-50 (Bankr. W.D.N.Y. 2003); *Aldrich*, 250 B.R. 908, 913 (Bankr. W.D. Tenn. 2000). Other courts have criticized this approach in that marital dissolution law only applies upon dissolution of a marriage, and it is property law that should be looked to instead. *In re Lock*, 329 B.R. 856, 859 (Bankr. S.D. Ill. 2005). Although there is no marital or property

8

law directly on point, this Court finds that in Massachusetts, "the concept of marriage as a shared partnership is a broad principle that is now widely accepted and used by courts as part of their decisional framework." *Innis*, 331 B.R. at 788 (recognizing overarching theme of martial partnership in Illinois law); *See Baccanti v. Morton*, 434 Mass. 787 (2001) (recognizing general principle that property acquired during marriage is part of the marital property subject to distribution); Mass. Gen. Laws ch. 208, § 34 (2003). Therefore, Massachusetts law is not at odds with the 50/50 split approach and the Court adopts this method of apportioning the Refund in this case.

The Court is aware that other courts adopting the "50/50 refund rule" have permitted rebuttal evidence based on the history of the spouses' financial independence. *Innis*, 331 B.R. at 789. This Court respectfully disagrees and will allow only the narrow rebuttal evidence permitted by the court in *Innis*.

> In the absence of a domestic relations court order or an enforceable, written, prepetition contract between the spouses designating alternative ownership of the refund, it is difficult to see why any inquiry need be made beyond the fact that the parties voluntarily elected to file a joint return.

*Id.*

The test adopted by this Court provides a bright-line rule that is easy to understand and apply. Moreover, it "provides guidance, in advance, to debtors and their attorneys that allows for effective prebankruptcy planning," a concern raised by the Debtor in his Motion. *Id.* Finally, it will "eliminate much of the litigation that would otherwise be needed to resolve the issue…and…simplif[y] the issues in the litigation that may still be necessary." *Id.*

Applying the "50/50 refund rule" to the case at hand leads to the conclusion that the Trustee is entitled to one half of the amount of the Refund attributable to the pre-

9

petition portion of the 2007 tax year, or $2199.22. The Debtor offers no evidence of the sort discussed above to rebut the presumption of joint ownership. Instead, the Debtor asks the Court to adopt a rule allocating the pre-petition portion of the Refund between him and his spouse based on their respective withholding; the Court declines to adopt this rule.

A separate order shall issue.

Dated: July 25, 2008

By the Court,

*[signature: Joel B. Rosenthal]*

Joel B. Rosenthal
United States Bankruptcy Judge